### CHANDLER v. JOHNSTON.
#### No. 10170.

Circuit Court of Appeals, Ninth Circuit.
Jan. 22, 1943.

Elmer Chandler, of Alcatraz Island, California, for appellant.

Frank J. Hennessy, U. S. Atty., and A. J. Zirpoli and Thomas C. Lynch, Asst. U. S. Attys., all of San Francisco, Cal., for appellee.

Before GARRECHT, HANEY, and HEALY, Circuit Judges.

GARRECHT, Circuit Judge.

Appellant, Elmer Chandler, who is incarcerated in the United States Penitentiary at Alcatraz, California, filed in the District Court of the United States for the Northern District of California, Southern Division, a petition for writ of habeas corpus, alleging, in substance, that he has fully served the sentences imposed upon him and that he is now being illegally· detained in said prison. Upon consideration of the petition and the return to an order ·to show cause made by James A: Johnston, warden of the Alcatraz penitentiary, the district court entered an order denying the application for the writ and dismissing the petition. That order provides. the basis for this appeal. The district judge has attested to the good faith of appellant, who is proceeding in forma pauperis.

As to the factual situation involved in this case there is no disagreement, and it may be described as follows:

On September 28, 1933, petitioner Chandler commenced service of a sentence of five years in a federal penitentiary for violation of the Dyer Act, 18 U.S.C.A. § 408. Although his complete sentence would not have expired until September 27, 1938, he was released on February 7, 1937, deductions from the maximum term having been allowed for good conduct (18 U.S.C.A. §§ 710, 713) and for industrial employment (18 U.S.C.A. § 744h). Shortly thereafter petitioner was again convicted of violating the Dyer Act, and on May 10, 1937, entered upon the service of another five-year sentence. With allowance for industrial good time he was eligible for release on this second sentence on January 6, 1942. On that day the warden at Alcatraz executed a warrant which had theretofore been issued by the chairman of the United States Board of Parole (18 U.S.C.A. §§ 716b, 723c), and which, after stating a finding to the effect that petitioner had violated the conditions of his release made on February 7, 1937, from the 1933 five-year sentence, ordered that petitioner be held in custody as a fugitive from justice. A subsequent order issued by the Bureau of Prisons specified that petitioner should serve in the Alcatraz penitentiary the balance of his five-year sentence of September 28, 1933, it being deemed (18 U.S.C.A. § 719) that he had forfeited all of the time allowed for good conduct when he again transgressed the Dyer Act after his release on February 7, 1937, and before the expiration of the maximum term of his 1933 sentence. The record of commitment shows that on May 1, 1943, petitioner will have completely served the balance of that sentence, and will then be entitled to an unconditional release.

Of the statutes cited above Sections 710, 713, 716b, 719, and 723c of Title 18 U.S. C.A. are particularly pertinent to this proceeding, and we here quote the relevant parts thereof:

Sec. 710. "Each prisoner who has been or shall hereafter be convicted of any offense against the laws of the United States, and is confined * * * in any United States penitentiary * * * for a definite term, ·other than for life, whose record of conduct shows that he has faithfully observed all the rules and has not been

subjected to punishment, shall be entitled to a deduction from the term of his sentence to be estimated as follows * * *."

Sec. 713. "Each prisoner entitled to the deduction provided for in section 710 of this title shall be discharged at the expiration of his term of sentence less the time so deducted * * *."

Sec. 716b. "Any prisoner who shall have served the term or terms for which he shall after June 29, 1932 be sentenced, less deductions allowed therefrom for good conduct, shall upon release be treated as if released on parole and shall be subject to all provisions of law relating to the parole of United States prisoners until the expiration of the maximum term or terms specified in his sentence * * *."

Sec. 719. "When a prisoner has been retaken upon a warrant issued by the Board of Parole, * * * the said Board may then, or at any time in its discretion, revoke the order and terminate such parole or modify the terms and conditions thereof. If such order of parole shall be revoked and the parole so terminated, the said prisoner shall serve the remainder of the sentence originally imposed; and the time the prisoner was out on parole shall not be taken into account to diminish the time for which he was sentenced."

Sec. 723c. "The Board of Parole * * * shall hereafter have the exclusive authority to issue warrants for the retaking of any United States prisoner who has violated his parole. The unexpired term of imprisonment of any such prisoner shall begin to run from the date he is returned to the custody of the Attorney General under said warrant, and the time the prisoner was on parole shall not diminish the time he was originally sentenced to serve."

Here petitioner contends that in denying his petition for a writ of habeas corpus the district court erred in the following particulars:

"(1) In failing to hold that Section 710 of Title 18 U.S.C.A., authorizes an unqualified deduction from sentence for good conduct, as provided for in such Section.

"(2) In failing to hold that Section 716b, is in direct conflict with Section 710 of Title 18 U.S.C.A.

"(3) In failing to hold that the Act of Congress of June 29, 1932, (Public No. 210 [18 U.S.C.A. §§ 709a, 710a, 716a, 716b]) repealed Section 710, where it holds that all laws and parts of laws in conflict herewith are hereby repealed.

"(4) Or—in failing to hold that Section 716b and Section 710, of Title 18 U.S.C.A., are so conflicting in their provisions, that Section 716b shall be unconstitutional.

"(5) In failing to hold that, if a prisoner was released under Section 710: the Board of Paroles are without authority to retain a prisoner farther or later.

"(6) In failing to hold that respondent conceded petitioner's contention, in writ of habeas corpus, by not showing, or stating any authorities in conflict or against petitioner's contentions.

"(7) In failing to issue the Writ as prayed for, and discharging petitioner from further unlawful custody."

In view of the arguments advanced in petitioner's brief, based upon the above specification of errors, his contentions may be summarized: That because the language of Section 710 is mandatory and because he fulfilled the conditions therein expressed, he actually earned the time which was accredited to him for his good conduct and acquired in the good-conduct deductions from his sentence a vested right, which made his release on February 7, 1937, an unconditional one, and that it is therefore beyond the power of Congress, or any officer, court, or agency, to revoke such good-time allowance. His ultimate conclusion is that since January 6, 1942, he has been eligible for release as having completely served all sentences imposed upon him.

On June 29, 1932, Congress enacted Section 716b, 18 U.S.C.A. being Section 4 of Public No. 210, 72d Congress, c. 310, 47 Stat. 381, whereby the provisions of the parole laws were extended to cases where prisoners who because of good conduct (18 U.S.C.A. §§ 710, 713) are released prior to the expiration of their maximum terms, it being provided that such releasees shall be "treated as if released on parole and shall be subject to all provisions of law relating to the parole of United States prisoners until the expiration of the maximum term or terms specified in [their] sentence[s]". Thus it is seen that this Section 716b has qualified[1]

---

[1] It was stated in Section 5 of said Public No. 210, 72d Congress, 18 U.S.C. A. § 709 a note, that "All laws and parts of laws in conflict herewith * * * are hereby repealed".

the releases to which prisoners become entitled by virtue of Sections 710 and 713, Act of March 3, 1875, 18 Stat. 479, as amended by the Act of June 21, 1902, 32 Stat. 397, so as to make them conditional. Petitioner's release on February 7, 1937, was, then, by the express statement of Section 716b, a conditional one, just as though he had been a regular parolee; and when he violated the Dyer Act, 18 U.S.C.A. § 408, during the period of his conditional release, he, like any parolee, became liable, by enforcement of a forfeiture of all his good-conduct time, to service in prison for the balance of his sentence with no credit allowed for the time he was at large as a conditional releasee. 18 U.S.C.A. §§ 719, 723c.

This interpretation is in accord with that expressed in the case of Story v. Rives, 68 App.D.C. 325, 97 F.2d 182, 184: "Although release following the allowance of deductions for good conduct, as provided by statute, cannot be denied a prisoner, nevertheless its granting in the first instance is in the nature of a privilege bestowed by the legislature, * * * and, consequently, is subject to all conditions properly attached thereto. By section 4 of the Act of June 29, 1932, 47 Stat. 381, 18 U.S.C.A. § 716b, Congress attached as a condition to the early release of any prisoner, on account of good conduct allowances, the limitation that he should be 'subject to all provisions of law relating to the parole of United States prisoners.' In other words, he is thereby placed under the supervision of the United States Board of Parole and becomes a ward of such Board automatically upon release."

Petitioner contends that this Section 716b is unconstitutional, not designating any particular provision or provisions of the Constitution as being violated; he makes merely the gratuitous assertion of unconstitutionality.

Congress, being the national legislative body, may prescribe the expiation for a violation of any of its valid criminal statutes; and if the punishment imposed for a transgression be imprisonment, Congress may specify how and under what conditions that imprisonment shall be served. The scope of the legislative body's power in this respect may be expressed as follows: "Subject only to constitutional limitations, such as those prohibiting cruel

and unusual punishment, excessive fines, the enactment of ex post facto laws, the imposition of double jeopardy, and those guaranteeing equal protection of the laws, due process of law, etc., the legislature may fix the punishment for crime as it sees fit. Its power is practically unlimited; it may take property, liberty, or life, in punishment for an infraction of the law, so long as it does not in so doing infringe or violate any of the guaranties secured to all citizens by the Constitution. Its power is not a special grant or limited authority, but a part of the legislative or sovereign power of the state to maintain social order and to take life and liberty and all the rights of both when the sacrifice is necessary. * * *" 14 Am. Jur. pp. 155, 156, § 507.

We fail to perceive that Section 716b is in any manner unconstitutional. Certainly the terms of Section 716b do not convert the prison sentences imposed upon violators of the law into cruel and unusual punishments; nor is it an ex post facto law, for it is specifically prospective in its application. Because it modifies the effects of statutes (18 U.S.C.A. §§ 710, 713) in force before its enactment does not, contrary to petitioner's contention, render it unconstitutional; if the power of Congress is such that it could have enacted, to begin with, a law having the effects of those statutes as modified, then the modification is valid. If Congress has authority to impose a penalty, it can couple any curtailment of the punishment with any conditions it may prescribe. No reason is advanced why Sections 710 and 713 as modified by Section 716b are invalid, and we are unable to suggest any.

We conclude: That Section 716b is a valid enactment; that because petitioner's conviction and sentence in 1933 occurred subsequently to its effective date, his case is governed by its provisions, and although he was entitled as a matter of right (§ 713) to be released on February 7, 1937, because he had complied with the stipulations of Section 710, yet his release was conditional, and he was to be treated as a parolee; and he having violated the conditions of his release, the warrant of the Board of Parole was properly issued and executed, and as a result, his present imprisonment in the Alcatraz prison is legal.

The order appealed from is affirmed.