**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 22 2003**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JAMES D. PLOTTS,

Defendant - Appellant.

No. 02-3412

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**(D. Ct. No. 02-CR-10015-JTM)**

---

Submitted on the briefs:[*]

David J. Phillips, Federal Public Defender, and Timothy J. Henry, Assistant Federal Public Defender, District of Kansas, Wichita, Kansas, for Appellant.

Eric F. Melgren, United States Attorney, and Brent I. Anderson, Assistant United States Attorney, Office of the United States Attorney, Wichita, Kansas, for Appellee.

---

Before **TACHA**, Chief Circuit Judge, **EBEL**, and **BRISCOE**, Circuit Judges.

---

[*]After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

**TACHA**, Chief Circuit Judge.

Defendant-Appellant James Plotts pleaded guilty to one count of receiving child pornography over the Internet in violation of 18 U.S.C. § 2252(a)(2), and one count of criminal forfeiture in violation of 18 U.S.C. § 2253(a)(3). The district court sentenced Mr. Plotts to an eighty-seven-month prison term, to be followed by five years of supervised release. As a condition of his supervised release, the district court ordered Mr. Plotts to cooperate in the collection of his DNA, as required by 18 U.S.C. § 3583(d) ("the DNA Act"). Mr. Plotts filed a timely notice of appeal on November 19, 2002. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and AFFIRM.

## I. Background

On appeal, Mr. Plotts first argues that the district court erred in construing U.S.S.G. § 2G2.2(b)(4) to require a mandatory, rather than discretionary, five-level sentence enhancement. Mr. Plotts also argues that the DNA Act is unconstitutional, because it exceeds Congress's power under the Commerce Clause of the Federal Constitution.

## II. Discussion

### A. Enhancement for prior convictions under § 2G2.2(b)(4)

We first address Mr. Plotts's claim that the district court incorrectly

interpreted § 2G2.2(b)(4) to mandate, rather than permit, a five-level increase in his sentence. "The district court's interpretation of the sentencing guidelines is a legal question subject to *de novo* review." *United States v. Castro-Rocha*, 323 F.3d 846, 848-49 (10th Cir. 2003).

Section 2G2.2(b)(4) of the Sentencing Guidelines reads, "If the defendant engaged in a pattern of activity involving the sexual abuse or exploitation of a minor, increase by 5 levels." U.S.S.G. § 2G2.2(b)(4) (2002). Application Note 2 provides, "[i]f the defendant engaged in the sexual abuse or exploitation of a minor at any time . . . and subsection (b)(4) does not apply, an upward departure may be warranted." *Id.*, Application Note 2. Considering the interplay of these provisions, the district judge ruled that subsection (b)(4) required, rather than permitted, a five-level increase to Mr. Plotts's sentence.

On appeal, Mr. Plotts argues that reading § 2G2.2(b)(4) in conjunction with Application Note 2 indicates that the Sentencing Commission intended § 2G2.2(b)(4) to permit, but not require, a five-level increase. Mr. Plotts reasons that subsection (b)(4) permits, rather than requires, such an increase because Application Note 2 makes clear that instances will exist in which a defendant will have abused another child, and yet a subsection (b)(4) increase will not apply. Thus, Mr. Plotts concludes that subsection (b)(4) cannot be a mandatory requirement if situations will exist in which a judge will not apply it. Mr. Plotts

adds that, because the subsection is open to differing interpretations, we should follow the rule of lenity, which requires courts to interpret ambiguous statutes in favor of criminal defendants.

In light of the plain language of subsection (b)(4), however, we find Mr. Plotts's suggested interpretation unpersuasive. We interpret the Sentencing Guidelines "as if they were a statute or court rule." *United States v. Gay*, 240 F.3d 1222, 1230 (10th Cir. 2001). As with all statutory interpretation, we begin our analysis with the language of subsection (b)(4), "'giving the words used their ordinary meaning.'" *United States v. Gacnik*, 50 F.3d 848, 852 (10th Cir. 1995) (quoting *Moskal v. United States*, 498 U.S. 103, 108 (1990)). "Where the language is clear and unambiguous, it must be followed except in the most extraordinary situation where the language leads to an absurd result contrary to clear legislative intent." *United States v. Tagore*, 158 F.3d 1124, 1128 (10th Cir. 1998) (internal quotation omitted).

A plain reading of subsection (b)(4) shows that it mandates a five-level sentence enhancement for qualified offenders. Its language could not be more clear: "If the defendant engaged in a pattern of activity involving the sexual abuse or exploitation of a minor, increase by 5 levels." U.S.S.G. § 2G2.2(b)(4). Moreover, where the Guidelines vest judges with discretion, as Mr. Plotts argues subsection (b)(4) does, they generally do so explicitly. *See, e.g.*, U.S.S.G. § 5k2.1

("If death resulted [from defendant's crime], the court *may* increase the sentence . . . .") (emphasis added). Because the Guidelines do not employ permissive language in subsection (b)(4), the rules of statutory construction compel the conclusion that the Sentencing Commission intended it to require a mandatory, rather than discretionary, five-level increase for qualifying cases. *See Universal Const. Co., Inc. v. Occupational Safety & Health Review Comm'n.*, 182 F.3d 726, 729 (10th Cir. 1999) ("Where language appears in one section of a statute but not in another section, we assume the omission was intentional.").

Moreover, we see no conflict between a mandatory interpretation of subsection (b)(4) and Application Note 2. Admittedly, the Note does indicate that instances will exist in which a defendant will have abused another child, and yet a subsection (b)(4) increase will not apply. This does not trouble us, however, because as noted by the district court, such a scenario would occur, for instance, when a defendant has engaged in only a single previous act of sexual abuse, which would not qualify as a "pattern of activity." *See* U.S.S.G. § 2G2.2, Application Note 1 ("'Pattern of activity involving the sexual abuse or exploitation of a minor' means any combination of *two or more* separate instances of . . . sexual abuse . . . .") (emphasis added). Thus, Application Note 2 indicates nothing more than that such scenarios, even though not technically qualifying for a five-level increase under subsection (b)(4), could nevertheless qualify for

-5-

upward departure.  As such, we see no conflict between the mandatory increase

for a pattern of activity in subsection (b)(4) and the second Application Note's

recognition that certain cases will not qualify for a subsection (b)(4)

enhancement, even though they may merit an increased sentence.  We thus reject

Mr. Plotts's proffered interpretation.

Finally, Mr. Plotts argues that the rule of lenity requires us to interpret

subsection (b)(4) in his favor.  As we have often stated, however, the rule of

lenity only applies when there is a "grievous ambiguity or uncertainty in the

language and structure of the act."  *United States v. Wilson*, 10 F.3d 734, 736

(10th Cir. 1993) (internal quotation marks and citation omitted), *cert. denied*, 511

U.S. 1057 (1994).  Because we find that subsection (b)(4) is unambiguous, Mr.

Plotts's "mere assertion of an alternative interpretation of a sentencing guideline

is not enough to bring the rule into play."  *Tagore*, 158 F.3d at 1128 n.3.

## B.  Constitutionality of the DNA Act

We next address Mr. Plotts's argument that the DNA Act is

unconstitutional.  "We review challenges to the constitutionality of a statute *de*

*novo*."  *United States v. Dorris*, 236 F.3d 582, 584 (10th Cir. 2000).  "Statutes are

presumed constitutional."  *Id.* (citing *United States v. Morrison*, 529 U.S. 598,

607 (2000)).

Mr. Plotts argues that the DNA Act is unconstitutional for three reasons.

He contends that the Act violates the Fourth Amendment, contravenes the separation of powers doctrine, and exceeds Congress's authority to legislate under the Commerce Clause. Mr. Plotts advanced these arguments before we announced our decision in *United States v. Kimler*, 335 F.3d 1132, 1146 (10th Cir. 2003), in which we rejected identical Fourth Amendment and separation of powers challenges to the DNA Act. *But see United States v. Kincade*, ___ F.3d ___, 2003 WL 22251374, at *13 (9th Cir. Oct. 2, 2003). Thus, for the reasons stated in *Kimler*, we reject Mr. Plott's first two arguments.

Mr. Plotts's Commerce Clause challenge to the DNA Act merits further attention. [1] Pointing to the Supreme Court's recent decisions in *United States v. Lopez*, 514 U.S. 549 (1995), and *United States v. Morrison*, 529 U.S. 598 (2000), Mr. Plotts argues that the DNA Act regulates conduct that is noneconomic in nature and that lacks any substantial relation to interstate commerce. Mr. Plotts concludes that the DNA Act, in essence, is an exercise of plenary police power, a power which Congress lacks.

In response, the government argues that the DNA Act is a valid exercise of Congress's power to regulate "things in interstate commerce." The government reasons that because many of the DNA samples taken pursuant to the Act will

---

[1]Although this Commerce Clause argument was raised by the parties in *Kimler* as well, we declined to address the issue at that time because it was raised for the first time on appeal. *Kimler*, 335 F.3d at 1138 n.6.

travel in interstate commerce, the Act is constitutional even though the regulation under the Act is noneconomic in nature.

We find it unnecessary to review the Act's constitutionality under either proposed theory. Whether the DNA Act is properly construed as a civil sanction[2] or a law enforcement tool[3] (an issue that we do not reach today), we find that the Act is a legitimate exercise of congressional power under the Necessary and Proper Clause.[4]

"So that the Constitution 'be not a splendid bauble,' the framers of our government inserted the Necessary and Proper Clause into the Constitution to 'remove all doubts respecting the right to legislate on that vast mass of incidental powers which must be involved in the constitution.'" *United States v. Sabri*, 326

---

[2]As the DNA Act only applies to persons convicted of enumerated criminal sexual offenses and acts as a deterrent to future crime, arguably, it could be construed as a civil sanction. *See, e.g., United States v. Ward*, 448 U.S. 242, 250 (1980) (holding that an act's legislative history, which focuses upon public safety, does not bar a federal court from finding that the act is in fact a sanction); *State v. Myers*, 923 P.2d 1024 (Kan. 1996) (providing a thorough discussion concluding that the Kansas Sex Offender Registration Act constitutes a sanction, even though the legislative history only presented public safety concerns).

[3]The legislative history of the DNA Act supports the view that the Act, properly construed, is a law enforcement tool. *See* H.R. Rep. No. 106-900(I), at 10 (2000).

[4]In passing the DNA Act, Congress relied on its authority to legislate under the Necessary and Proper Clause in conjunction with its power to regulate interstate commerce and the nation's military forces, as well as its general legislative power over the District of Columbia. *See* H.R. Rep. No. 106-900(I), at 16.

F.3d 937, 948 (8th Cir. 2003) (quoting *M'Culloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 420-21 (1819)). This clause vests Congress with the power "[t]o make all Laws which shall be necessary and proper for carrying into Execution" both its enumerated powers and "all other Powers vested by [the] Constitution in the Government of the United States, or in any Department or Officer thereof." U.S. Const. Art. I, § 8, cl. 18.

The Supreme Court "long ago rejected the view that the Necessary and Proper Clause demands that an Act of Congress be '*absolutely* necessary' 'to the exercise of an enumerated power.'" *Jinks v. Richland County, South Carolina*, ___ U.S. ___, 123 S. Ct. 1667, 1671, 155 L. Ed. 2d 631 (2003) (quoting *M'Culloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 414-15 (1819)). In discussing the scope of the Necessary and Proper Clause, the Supreme Court has explained:

> [W]e think the sound construction of the constitution must allow to the national legislature that discretion, with respect to the means by which the powers it confers are to be carried into execution, which will enable that body to perform the high duties assigned to it, in the manner most beneficial to the people. Let the end be legitimate, let it be within the scope of the constitution, and all means which are appropriate, which are plainly adapted to that end, which are not prohibited, but consist with the letter and spirit of the constitution, are constitutional.

*M'Culloch v. Maryland*, 17 U.S. (4 Wheat) 316, 421 (1819). At bottom, then, the Necessary and Proper Clause enables Congress to enact laws, subject to other constitutional constraints, "that bear a rational connection to any of its

-9-

enumerated powers." *United States v. Edgar*, 304 F.3d 1320, 1326 (11th Cir. 2002).

First, we apply these principles to the DNA Act construed as a civil sanction for the violation of a valid federal criminal law. The Court has held "Congress may impose penalties in aid of the exercise of any of its enumerated powers." *Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381, 393 (1940); *United States v. Von Stephens*, 774 F.2d 1411, 1413 (9th Cir. 1985) ("Article 1, section 8, clause 18 allows Congress to make all laws, including those imposing penalties, necessary and proper for carrying out its powers.") (citations omitted).

As other courts of appeals have noted, Congress's discretion in this domain is vast. "Congress has a discretion as to what sanctions shall be imposed for the enforcement of the law and this discretion is unlimited so long as the method of enforcement does not impinge upon some other constitutional prohibition." *Rodgers v. United States*, 138 F.2d 992, 994-95 (6th Cir. 1943) (internal citations omitted). The Ninth Circuit has also expounded upon Congress's broad powers to fashion sanctions for the violation of federal crimes:

> The scope of the legislative body's power [to set penalties] may be expressed as follows: 'Subject only to constitutional limitations, such as those prohibiting cruel and unusual punishment, excessive fines, the enactment of ex post facto laws, the imposition of double jeopardy, and those guaranteeing equal protection of the laws, due process of law, etc., the legislature may fix the punishment for crime as it sees fit. Its power is practically unlimited; it may take property, liberty, or life, in punishment for an infraction of the law, so long as it does not in so doing infringe or

violate any of the guaranties secured to all citizens by the Constitution. *Chandler v. Johnston*, 133 F.2d 139, 142 (9th Cir. 1943).

Applying this framework, we conclude that the DNA Act is a necessary and proper sanction to a valid criminal law. First, as we have already established, the Commerce Clause empowers Congress to criminalize the receipt of child pornography over the Internet—the crime to which Mr. Plotts pleaded guilty. *See Kimler*, 335 F.3d at 1139. Second, pursuant to the Necessary and Proper Clause, Congress may fashion penalties for the violation of valid federal laws. *Von Stephens*, 774 F.2d at 1413.[5] Third, absent his arguments mooted by our *Kimler* decision, Mr. Plotts does not contend that the DNA Act violates the "cruel and unusual punishment, excessive fines, the enactment of ex post facto laws, the imposition of double jeopardy, and those guaranteeing equal protection of the laws, due process of law" provisions of the Constitution. *Chandler*, 133 F.2d at 142 (holding Congress's power to fashion criminal sanctions nearly unlimited, except for the dictates of the forgoing constitutional provisions).

Given Mr. Plotts's failure to present any viable argument that the DNA Act

---

[5]It is true that the DNA Act is not a criminal punishment in and of itself. *See United States v. Sczubelek*, 255 F. Supp. 2d 315, 325 (D. Del. 2003). Nevertheless, Congress has the power to impose nonpunitive sanctions for the violation of criminal statutes. *United States v. Ward*, 448 U.S. 242, 250 (1980) ("We have noted on a number of occasions that 'Congress may impose both a criminal and a civil sanction in respect to the same act or omission.'") (quoting *Helvering v. Mitchell*, 303 U.S. 391, 399, 58 S. Ct. 630, 633, 82 L. Ed. 917 (1938)) .

"impinge[s] upon some other constitutional prohibition," *Rodgers*, 138 F.2d at 995, we conclude that the DNA Act, if construed as a civil sanction, is necessary and proper to the exercise of the Commerce Clause.

These same constitutional principles mandate that if the DNA Act is best construed, not as a sanction, but as a law enforcement tool, then the Act is a law necessary and proper to the Executive's constitutionally delegated law enforcement powers. First, as stated above, the crime to which Mr. Plotts pleaded guilty constitutes a valid exercise of Congress's Commerce Clause powers. *See Kimler*, 335 F.3d at 1139-40. Second, the Constitution invests the Executive with the duty to "take Care that the Laws be faithfully executed." U.S. Const. Art. II, § 3; *see also Schroder v. Bush*, 263 F.3d 1169, 1176 (10th Cir. 2001) (describing the Take Care Clause as a textual commitment of law enforcement authority to the Executive Branch). It follows, then, that the Necessary and Proper Clause entrusts Congress with the power to pass laws to aid the Executive in prosecuting those who, like Mr. Plotts, violate federal criminal laws. *Cf. United States v. Lue*, 134 F.3d 79, 82 (2d Cir. 1998) (holding that the Necessary and Proper Clause enables Congress to pass laws to help effectuate the Article II Treaty Power).

This conclusion is consistent with both the letter and spirit of the Constitution. Chief Justice Marshall, writing in *M'Culloch*, noted that the Necessary and Proper Clause vests the federal government with the right "to

-12-

enforce the observance of law, by punishing its infraction." *M'Culloch*, 17 U.S. (4 Wheat.) at 416 (1819). Because this "right to punish" would be severely hampered without investigative techniques like the DNA Act, it follows that such techniques—so long as they do not violate other constitutionally protected rights—comport with the letter and spirit of the Constitution.

Finally, the DNA Act bears a rational relationship to the Executive's power to enforce validly enacted federal criminal laws. *See Edgar*, 304 F.3d at 1326. The Act's legislative history notes that Congress enacted it, in part, to provide "legal authority for DNA samples to be collected from persons convicted of Federal crimes, analyzed, and cataloged into a national database of convicted offenders." *See* H.R. Rep. No. 106-900(I), at 8. To this end, the Act requires the Director of the Bureau of Prisons or the probation office responsible to send all samples collected under the Act's authority to the FBI for inclusion in a database known as "CODIS." [6] 42 U.S.C. § 14135a. This database "enables federal, state, and local crime labs to exchange and compare DNA profiles electronically, thereby linking several crimes to each other and to convicted offenders." Fed. Bureau of Investigation, U.S. Dept. of Justice, *The FBI's Combined DNA Index System CODIS* 1 (2000). These sources illustrate the rational link between the provisions of the DNA Act and the enforcement of a valid federal criminal law.

---

[6]"CODIS" is an acronym for Combined DNA Index System.

-13-

Thus, whether the DNA Act, properly construed, is a civil sanction, an aid to law enforcement, or both, we hold that the Act is a constitutional exercise of legislative authority under the Necessary and Proper Clause.

### III. Conclusion

For the foregoing reasons, we AFFIRM the judgment of the district court.