UNITED STATES of America, Petitioner,

v.

Roger Dean TOM, Respondent.

Civil No. 06–3947 (PAM/JSM).

United States District Court, D. Minnesota.

May 23, 2008.

Joan D. Humes, United Health Group, Minnetonka, MN, Mary L. Trippler, Perry F. Sekus, United States Attorney's Office, Minneapolis, MN, for Petitioner.

Andrew H. Mohring, Caroline Durham, Katherian D. Roe, Office of the Federal Defender, Minneapolis, MN, for Respondent.

## MEMORANDUM AND ORDER

PAUL A. MAGNUSON, District Judge.

This matter is before the Court on Respondent Roger Dean Tom's ("Tom") Motion to Dismiss. For the reasons that follow, the Court grants the Motion.

## BACKGROUND

In 1997, Tom pled guilty in the District of Utah to one count of aggravated sexual abuse in violation of 18 U.S.C. § 2241(c) and was sentenced to 120 months in prison and 60 months of supervised release. The Bureau of Prisons ("BOP") assigned him to the Federal Medical Center in Rochester, Minnesota ("FMC–Rochester"), from where he was scheduled for release on October 4, 2006.

On October 2, 2006, Tom's release was stayed after the United States of America ("Government") filed a petition pursuant to 18 U.S.C. § 4248(a), which authorizes the BOP to "stay the release" of an inmate whom the BOP certifies as a "sexually dangerous person" until the Court can determine whether there is clear and convincing evidence that the person is in fact sexually dangerous. According to the petition, FMC–Rochester mental health staff examined Tom and determined that he was a sexually dangerous person. (Pet. at 1–2.) He has served no portion of supervised release. (Supp. Mem. at 3.)

Pursuant to § 4248(a), the Court scheduled a hearing to determine whether there is clear and convincing evidence of Tom's sexual dangerousness. Tom canceled the hearing by filing this Motion alleging that § 4248 violates the United States Constitution.

The parties characterize the Motion as the first of its kind in the Eighth Circuit but cite four decisions from other Districts addressing the constitutionality of § 4248. Three courts have determined that § 4248 was a valid exercise of Congressional power. *United States v. Dowell,* No. 06–CV–1216–D, 2007 U.S. Dist. LEXIS 96564 (W.D.Okla. Dec. 5, 2007); *United States v. Shields,* 522 F.Supp.2d 317 (D.Mass.2007); *United States v. Carta,* 503 F.Supp.2d 405 (D.Mass.2007). One court has ruled that Congress exceeded its power by enacting § 4248. *United States v. Comstock,* 507 F.Supp.2d 522 (E.D.N.C.2007).

## DISCUSSION

### A. 18 U.S.C. § 4248

The statute at issue, 18 U.S.C. § 4248, is part of the Adam Walsh Child Protection and Safety Act that Congress enacted in July of 2006. It was described as "[a]n Act [t]o protect children from sexual exploitation and violent crime, to prevent child abuse and child pornography, to promote Internet safety, and to honor the memory of Adam Walsh and other child crime victims." Pub.L. No. 109–248, 120 Stat. 587 (2006). Section 4248(a) reads in its entirety:

> In relation to a person who is in the custody of the Bureau of Prisons, or who has been committed to the custody of the Attorney General pursuant to section 4241(d), or against whom all criminal charges have been dismissed solely for reasons relating to the mental condition of the person, the Attorney General or any individual authorized by the Attorney General or the Director of the Bureau of Prisons may certify that the person is a sexually dangerous person, and transmit the certificate to the clerk of the court for the district in which the person is confined. The clerk shall send a copy of the certificate to the person, and to the attorney for the Government, and, if the person was committed pursuant to section 4241(d), to the clerk of the court that ordered the commitment. The court shall order a hearing to determine whether the person is a sexually dangerous person. A certificate filed under this subsection shall stay the re-

lease of the person pending completion of procedures contained in this section.

"Sexually dangerous person" is defined as "a person who has engaged or attempted to engage in sexually violent conduct or child molestation and who is sexually dangerous to others." 18 U.S.C. § 4247(a)(5). "Sexually dangerous to others" means that "the person suffers from a serious mental illness, abnormality, or disorder as a result of which he would have serious difficulty in refraining from sexually violent conduct or child molestation if released." *Id.* § (a)(6).

After a hearing, if "the court finds by clear and convincing evidence that the person is a sexually dangerous person, the court shall commit the person to the custody of the Attorney General." 18 U.S.C. § 4248(d). On such a finding, the BOP is required to request that the state where the person is domiciled or was tried "assume responsibility for his custody, care, and treatment." *Id.* If the state refuses, then the Attorney General takes custody of the person and places him in a "suitable facility" until the state agrees to assume responsibility or the person no longer is sexually dangerous, whichever is earlier. *Id.*

The statute appears in Chapter 313 of the Criminal Code, 18 U.S.C. §§ 4241–4248, titled "Offenders with Mental Disease or Defect." Chapter 313 also contains provisions pertaining to mental competency to stand trial, insanity at time of offense, hospitalization of those found not guilty by reason of insanity, hospitalization of those with mental disease or defect, and hospitalization of a person due for release but suffering from a mental defect.

## B. "Facial" Challenge

Tom's argument is that the Government's Petition must be dismissed because (1) neither the Constitution's Commerce Clause nor Necessary and Proper Clause authorized Congress to enact the statute, (2) the statute violates due process and equal protection, and (3) the statute is a criminal sanction requiring the Government to establish sexual dangerousness beyond a reasonable doubt. The Government characterizes the Motion as a "facial" challenge that fails because even if the statute cannot constitutionally be applied to Tom, it conceivably could be applied to someone consistent with the Constitution. *See, e.g., Wash. State Grange v. Wash. State Republican Party,* —— U.S. ——, 128 S.Ct. 1184, 1190, 170 L.Ed.2d 151 (2008) (facial challenge permitted only when party " 'establish[es] that no set of circumstances exists under which the Act would be valid,' *i.e.* that the law is unconstitutional in all of its applications") (quoting *United States v. Salerno,* 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987)).

Facial challenges arise most often when a party claims a deprivation of a constitutionally protected liberty. *See id.* at 1187 (examining facial validity of election law with respect to First Amendment); *Salerno,* 481 U.S. at 755, 107 S.Ct. 2095 (holding that Bail Reform Act provision was not facially invalid under Fifth or Eight Amendments). "[F]acial challenges are best when infrequent," and are not the preferred means for challenging Congress's power to enact a statute. *Sabri v. United States,* 541 U.S. 600, 608–10, 124 S.Ct. 1941, 158 L.Ed.2d 891 (2004) (rejecting "facial" challenge to Congress's power to enact criminal bribery statute and characterizing constitutional claim as "an overbreadth challenge"); *see also Carta,* 503 F.Supp.2d at 407 ("[t]he precise test to apply to a facial challenge is not clear").

Although Tom alleges deprivation of constitutional liberties, his first argument is that Congress had no authority to enact § 4248. As the Court in *Comstock* concluded, "[i]f Congress lacked the authority to enact the [§ 4248] civil commitment

scheme at issue ... the commitment scheme could not be constitutionally applied." *Comstock,* 507 F.Supp.2d at 528. Thus, if Tom succeeds in his argument that Congress lacked authority to enact § 4248, it is of no moment whether a facial challenge might succeed.

## C. Congressional Power

■ The Commerce and Necessary and Proper Clauses are in Article 1, Section 8 of the United States Constitution, which governs Congress's power to enact statutes. The Commerce Clause authorizes Congress "[t]o regulate Commerce ... among the several States." U.S. Const. art. 1, § 8, cl. 3. The Necessary and Proper Clause authorizes Congress "to make all laws which shall be necessary and proper for carrying into Execution the forgoing Powers, and all other Powers vested by this Constitution in the Government of the United States, or in any Department or Officer thereof." *Id.* cl. 18. "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const. amend. X. If Congress has exceeded its constitutional authority in enacting a statute, then the statute may not be given effect and an action founded on it must be dismissed. *United States v. Morrison,* 529 U.S. 598, 604, 120 S.Ct. 1740, 146 L.Ed.2d 658 (2000); *United States v. Lopez,* 514 U.S. 549, 551, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995); *Comstock,* 507 F.Supp.2d at 560.

### 1. *Commerce Clause*

■ The Commerce Clause authorizes Congress to (1) "regulate the use of the channels of commerce"; (2) "regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities"; and (3) "regulate those activities having a substantial relation to interstate commerce." *Lopez,* 514 U.S. at 558–59, 115 S.Ct. 1624 (1995); *see also Morrison,* 529 U.S. at 608–09, 120 S.Ct. 1740. In furtherance of this power, Congress may make any "necessary and proper" law. U.S. Const. art. 1, § 8, cl. 18. Because there is no suggestion that § 4248 involves either the "channels of commerce" or "instrumentalities of interstate commerce," the question is whether the activities at issue have a "substantial relation to interstate commerce."

### a. *Lopez* and *Morrison*

In *Lopez,* the Court held that Congress exceeded its Commerce Clause authority by enacting the Gun–Free School Zones Act of 1990, which made it a federal offense "for any individual knowingly to possess a firearm at a place that the individual knows, or has reasonable cause to believe, is a school zone." 514 U.S. at 551, 115 S.Ct. 1624. In so holding, the Court stated that the Act "neither regulates a commercial activity nor contains a requirement that the possession be connected in any way to interstate commerce," and that "[u]nder our federal system, the States possess primary authority for defining and enforcing the criminal law." *Id.* at 551, 561 n. 3, 115 S.Ct. 1624 (quotation omitted).

The Court further observed that the Act "contains no jurisdictional element which would ensure, through case-by-case inquiry, that the firearm possession in question affects interstate commerce." *Id.* at 561, 115 S.Ct. 1624. Also relevant was that Congress made no findings as to how gun possession around schools affects interstate commerce. *Id.* at 562, 115 S.Ct. 1624. In response to the Government's arguments that the "costs of crime" and the impact of gun violence on "national productivity" provided Commerce Clause bases for the law, the Court responded: "if we were to accept the Government's argu-

ments, we are hard pressed to posit any activity by an individual that Congress is without power to regulate." *Id.* at 564, 115 S.Ct. 1624.

Five years later, in *Morrison,* the Court held that Congress exceeded its Commerce Clause authority by enacting the Violence Against Women Act ("VAWA"), which provided a civil remedy for victims of gender-motivated violence. 529 U.S. at 601–02, 120 S.Ct. 1740. First, the Court affirmed that *Lopez* made it clear that "Congress' regulatory authority is not without effective bounds" and that the "noneconomic, criminal nature of the conduct at issue was central to our decision in that case." *Id.* at 608, 610, 120 S.Ct. 1740. Next, the Court observed that the VAWA, like the Gun–Free School Zones Act, contained no "express jurisdictional element" limiting its application to interstate commerce. *Id.* at 611–13, 120 S.Ct. 1740.

The Court then observed that although Congress had made findings as to why VAWA affected interstate commerce, the findings were insufficient. *Id.* at 614, 120 S.Ct. 1740. The Court voiced "concern" that "Congress might use the Commerce Clause to completely obliterate the Constitution's distinction between national and local authority," and "reject[ed] the argument that Congress may regulate noneconomic, violent criminal conduct based solely on that conduct's aggregate effect on interstate commerce." *Id.* at 615, 617, 120 S.Ct. 1740. According to the Court: "The Constitution requires a distinction between what is truly national and what is truly local.... The regulation and punishment of intrastate violence that is not directed at the instrumentalities, channels, or goods involved in interstate commerce has always been the province of the States." *Id.* at 617–18, 120 S.Ct. 1740.

### b. Analysis

■ The Government asserts that "[t]he Commerce Clause provides the basis, di-rectly or in conjunction with the Necessary and Proper clause, for most current federal criminal law." (Opp'n Mem. at 12–13 (citing *Brooks v. United States,* 267 U.S. 432, 436, 45 S.Ct. 345, 69 L.Ed. 699 (1925); *Hoke v. United States,* 227 U.S. 308, 33 S.Ct. 281, 57 L.Ed. 523 (1913))). However, the Government's statement does not explain how *this* law, which on its face seeks to regulate through civil commitment a broad range of sexual violence that is not limited to future commission of federal crimes, comports with the dictates of *Lopez* and *Morrison.*

As in *Lopez,* a lack of Congressional findings has significantly deprived the Court of means to conclude that § 4248 is related to interstate commerce. *Lopez,* 514 U.S. at 562–63, 115 S.Ct. 1624. The statutory language is of a "noneconomic, criminal nature" and therefore of the type that the Court has identified as being "a province of the States." *Morrison,* 529 U.S. at 610, 617–18, 120 S.Ct. 1740; *see also Lopez,* 514 U.S. at 566, 115 S.Ct. 1624 ("[t]he Constitution ... withhold[s] from Congress a plenary police power").

Supporting this conclusion is the fact that for centuries states have been "provid[ing] for the forcible civil detainment of people who are unable to control their behavior and who thereby pose a danger to the public health and safety." *Kansas v. Hendricks,* 521 U.S. 346, 357, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997) (citing 1788 N.Y. Laws, ch. 31 (Feb. 9, 1788) (permitting confinement of the "furiously mad")); *see also* Utah Code Ann. § 62A–15–631 (involuntary commitment scheme for persons with "mental illness which poses a substantial danger"). The schemes specifically encompass sexually dangerous persons. *See Hendricks,* 521 U.S. at 371, 117 S.Ct. 2072 (affirming constitutionality of Kansas scheme); Minn.Stat. §§ 253B.02,

subds. 18b, 18c; 253B.07 *et seq.*; *Poole v. Goodno,* 335 F.3d 705, 708 (8th Cir.2003) ("[t]he Supreme Court has permitted states to set their own procedural requirements for civil commitments" of sexually dangerous persons); *see also In re Beaulieu,* 737 N.W.2d 231, 241 (Minn.Ct.App. 2007) (holding that Minnesota statute may be applied to Indian band members).

Section 4248, to the degree it might augment these state schemes, has no jurisdictional element to ensure its application only to situations involving interstate commerce, and therefore it does not fall within Congress' Commerce Clause authority. *Morrison,* 529 U.S. at 611–13, 120 S.Ct. 1740; *Lopez,* 514 U.S. at 561, 115 S.Ct. 1624. Further, even if the Court could read a broad interstate "costs of crime" rationale into the statute, the Supreme Court has held that the rationale provides insufficient Commerce Clause basis for a statute such as § 4248. *Lopez,* 514 U.S. at 564, 115 S.Ct. 1624. For these reasons, the Court agrees that "*Lopez* and *Morrison* suggest that § 4248 would be found unconstitutional if it were premised solely upon Congress's Commerce Clause authority." *Comstock,* 507 F.Supp.2d at 534.

The Court recognizes that *Lopez* and *Morrison* do not apply to every federal law that seeks to regulate criminal behavior within a state's borders. In *Gonzales v. Raich,* 545 U.S. 1, 125 S.Ct. 2195, 162 L.Ed.2d 1 (2005), for example, the Court affirmed Congress's power to enact a federal law regulating intrastate cultivation and possession of marijuana. *Id.* at 32–33, 125 S.Ct. 2195. However, the Court held that the law did not fit the *Lopez* and *Morrison* framework because the drug-related activities were "quintessentially economic." *Id.* at 25, 125 S.Ct. 2195; *see also Sabri,* 541 U.S. at 607–08, 124 S.Ct. 1941 (distinguishing *Morrison* and *Lopez* because challenge was to statute involving federal spending). Section 4248, by con-trast, is unrelated to economics but rather aims to regulate and prevent noneconomic criminal conduct that traditionally has been the province of the States.

The Court finds need to diverge from District Court cases holding that § 4248 fits within Congress' Commerce Clause power. *See Carta,* 503 F.Supp.2d at 407–08; *Shields,* 522 F.Supp.2d at 326; *Dowell,* 2007 U.S. Dist. LEXIS 96564, at *7–*21. The cases rely heavily on authority suggesting that Congress has power to authorize pretrial detention of persons charged with federal crimes, such as through the Bail Reform Act. However, the District Courts' authority included *Greenwood v. United States,* 350 U.S. 366, 76 S.Ct. 410, 100 L.Ed. 412 (1956), and *United States v. Perry,* 788 F.2d 100 (3d Cir.1986). These cases did not involve the Commerce Clause. Rather, in these cases, the detention procedures were affirmed as necessary and proper means to effectuate Congress' interest in punishing crimes through criminal trials.

In *Shields,* the court cited a dissent in another pretrial detention case, *United States v. Salerno,* where Justice Stevens found it "difficult to accept the proposition that the Government is without power to detain a person when it is a virtual certainty that he or she would otherwise kill a group of innocent people in the immediate future." 481 U.S. at 768, 107 S.Ct. 2095 (Stevens, J., dissenting). Again, in *Salerno,* the Commerce Clause was not at issue. Further, Justice Stevens went on to voice wariness even of pretrial detention procedures. *Id.* at 768, 107 S.Ct. 2095 ("I firmly agree with Justice Marshall that the provision of the Bail Reform Act allowing pretrial detention on the basis of future dangerousness is unconstitutional.... [A] pending indictment may not be given any weight in evaluating an individual's risk to the community or the need for immediate detention."). *Salerno* provides no support

for concluding that Congress was within its Commerce Clause authority when enacting § 4248.

The *Dowell* court relied on *United States v. Plotts*, 347 F.3d 873 (10th Cir. 2003), where the Tenth Circuit held that Congress had Commerce Clause authority, in addition to and in conjunction with the Necessary and Proper Clause, to enact the DNA Act that requires federal inmates to provide DNA samples. However, the *Plotts* court noted that Congress made specific findings as to how the Act fell within its power to regulate interstate commerce. *Id.* at 877 n. 4 (citing H.R.Rep. No. 106–900(I), at 16). In this situation, the Government agrees that Congress made no such findings associated with § 4248. Further, the court in *Plotts* found it relevant that the federal government was uniquely situated to develop means for "federal, state, and local crime labs to exchange and compare DNA profiles electronically, thereby linking several crimes to each other and to convicted offenders." *Id.* at 880 (citation omitted). Here, with respect to civil commitment of sexually dangerous persons, the federal government is not so uniquely situated.

The Court is all too aware that the consequences of sex crimes, like those of gun violence, are undeniably tragic, particularly when children are the victims. However, the Court cannot ignore the Supreme Court's unambiguous warning against affirming Congress's power to "regulate not only all violent crime, but all activities that might lead to violent crime." *Lopez*, 514 U.S. at 564, 115 S.Ct. 1624. In light of this authority and on this record, the Court concludes that Congress exceeded its Commerce Clause authority by enacting § 4248.

### 2. *Necessary and Proper Clause*

■ The next question is whether § 4248 is "necessary and proper" for effec-tuating a constitutionally vested power unrelated to interstate commerce. U.S. Const. art. 1, § 8, cl. 18; *see, e.g., Perpich v. Dep't of Defense*, 496 U.S. 334, 349, 354–55, 110 S.Ct. 2418, 110 L.Ed.2d 312 (1990) (Militia and Necessary and Proper Clauses, taken together, authorize federal government to send National Guard for training). According to the Government, those vested powers involve (a) a broad power to civilly commit people who are dangerous to society, and/or (b) the power to criminalize conduct and establish a penal system.

#### a. Civil commitment and detention

The Government does not specify what provision of the Constitution vests Congress with authority to enact laws for civil commitment. The Government's primary authority is the decision in *Greenwood,* in which the Supreme Court affirmed Congress's power to effect detention of persons deemed mentally incompetent to stand trial. The Court held that the statute was necessary and proper because the "petitioner came legally into the custody of the United States [and][t]he power that put him into such custody—the power to prosecute for federal offenses—is not exhausted." 350 U.S. at 375, 76 S.Ct. 410. Because the possibility of recovered mental competency remained, the Court concluded that the "federal authority to prosecute has [not] been irretrievably frustrated." *Id.*; *see also United States v. Shawar,* 865 F.2d 856, 859 (7th Cir.1989) ("Congress[ ] [has] power to provide for the custody of persons charged with crime and awaiting trial under the necessary and proper clause of Article I of the Constitution.") (citing *Greenwood,* 350 U.S. at 375, 76 S.Ct. 410).

It is true that persons subject to § 4248 legally came into federal custody, but the statute's similarities with the situation in

*Greenwood* end there. Section 4248 arises well after the federal authority to prosecute has expired. Further, in *Greenwood,* the Court limited its holding to the "narrow constitutional issue" before it and took pains to state that it was "decid[ing] no more than the situation before [it]" and that the decision was not to be read to "imply an opinion on situations not now before [it]." 350 U.S. at 375–76, 76 S.Ct. 410.

*Greenwood* does not stand for the proposition that Congress is broadly authorized to enact civil commitment schemes for potentially sexually dangerous persons in federal custody whose sentences have expired. *See Comstock,* 507 F.Supp.2d at 533 ("[i]mportantly, *Greenwood* did not address the source of Congressional authority to civilly commit a prisoner whose sentence is about to expire, . . . persons as to whom the power to prosecute is, in fact, exhausted"). Even Congress's power to provide for the custody of persons awaiting trial is "limited by the fact that care of insane persons is essentially the function of the several states." *Shawar,* 865 F.2d at 859.

The Government's other authority is the decision in *Perry,* where the Third Circuit Court of Appeals held that Congress was within its authority to enact detention measures in the Bail Reform Act. 788 F.2d at 111. Again, "the pre-trial detention scheme in *Perry* is distinguishable in several ways from the commitment scheme at issue in § 4248." *Comstock,* 507 F.Supp.2d at 537. Further, the Third Circuit warned that civil commitment, even of persons who present "a substantial risk of bodily injury," is a matter for the States, and that Congress may not legislate "simply to protect the general welfare of the community at large." 788 F.2d at 110.

At the hearing, the Government cited 18 U.S.C. § 4246, a companion statute in Chapter 313 of the Criminal Code that authorizes detention of persons due for release but who are dangerous because they suffer from "mental disease or defect." However, before a release is stayed, § 4246(a) requires that the BOP certify "that suitable arrangements for State custody and care of the person are not available," while § 4248(a) contains no such requirement.

In confronting this difference, the court in *Shields* concluded that because § 4246(d) and § 4248(d) both express a preference that a State ultimately assume responsibility for the "custody, care, and treatment" of the inmate after a court has determined that commitment is warranted, the statutes both "can be viewed as a 'backup' measure, designed to ensure that a dangerous individual does not slip through the cracks simply because he is in federal, as opposed to state, custody." *Shields,* 522 F.Supp.2d at 328. The court further concluded that the difference was "not significant enough to render [§ 4248] inconsistent with the letter and spirit of the constitution." *Id.*

The Court wholly affirms the notion that a dangerous person not be permitted to "slip through the cracks," but the Court is unable to ignore the difference between the statutes. Both § 4246(a) and § 4248(a) authorize the BOP to "stay the release" of an inmate whose sentence of incarceration has expired "pending completion of procedures contained in this section." However, only § 4246(a) requires the BOP to condition the stayed release on its certification that suitable arrangements for State custody and care of the person are not available.[1] Therefore, while

---

1. The record reflects that the petition filed two days before Tom's scheduled release con-

tained an uncertified representation that "suitable arrangements for state custody are

§ 4246 might reasonably be seen as a legitimate federal protective effort to step in where states have failed, the lack of an initial certification requirement in § 4248(a) distinguishes it from § 4246.

For this reason, and because Congress's recognized interest in pretrial detention is wholly distinguishable from any claimed interest in detention and commitment procedures after a sentence has been served, the Court concludes that § 4248's scheme is not founded on a Constitutional authorization for Congress to adopt civil commitment statutes.

b. Criminal conduct and penal system

■ According to the Government, "there is no dispute that Congress has the power to criminalize conduct and to establish a penal system." (Opp'n Mem. at 11.) The Government's primary authority are the decisions in *United States v. Fox*, 95 U.S. 670, 24 L.Ed. 538 (1877), and *Sabri*, 541 U.S. at 605, 124 S.Ct. 1941. However, in those cases, the Supreme Court held that the bankruptcy and bribery laws at issue were necessary and proper for furthering specifically enumerated constitutional powers. *See Fox*, 95 U.S. at 672 (citing Bankruptcy Clause, U.S. Const. art. 1, § 8, cl. 4); *Sabri*, 541 U.S. at 605, 124 S.Ct. 1941 (citing Spending Clause, U.S. Const. art. 1, § 8, cl. 1). The Government has identified no clause in the Constitution that authorizes Congress to prevent future criminal conduct.

■] The Government reasons that because Congress may punish certain sex crimes, Congress necessarily can enact statutes to prevent such crimes. However, the statutes that the Government cites all contain specific jurisdictional limits or pertain to interstate conduct. *See* 18 U.S.C. §§ 2241–45 (offenses and punishment for sexual misconduct); 18 U.S.C. § 2251–52 (criminalizing sexual exploitation of children). As discussed above, § 4248 contains no such jurisdictional limit regarding the types of crimes the inmate might commit if released, and "suppression of violent crime and vindication of its victims" are police powers that are "reposed in the States." *Morrison*, 529 U.S. at 618, 120 S.Ct. 1740; *see also Hendricks*, 521 U.S. at 373, 117 S.Ct. 2072 (Kennedy, J., concurring) (stating that Kansas statute "conforms to our precedents" but that civil confinement used as "a mechanism for retribution or general deterrence . . . would not"). The Court agrees that "[t]he federal government simply does not have broad power generally to criminalize sexually dangerous conduct and child molestation." *Comstock*, 507 F.Supp.2d at 538.

■ To support its penal system argument, the Government suggests that § 4248 is an extension of Congress's power to operate prisons. There is little doubt that Congress may punish sex crimes "in a Federal prison, or in any prison, institution, or facility in which persons are held in custody by direction of or pursuant to a contract or agreement with the head of any Federal department or agency." 18 U.S.C. § 2241(a). In addition, the United States Sentencing Commission recognized the unique and real danger that sexual offenders pose when it authorized District Courts to impose life terms of supervised release for certain offenders as well as strict conditions of release involving treatment, monitoring, and warrantless search. *See* U.S. Sent. Guidelines Manual §§ 5D1.2(b)(2), 5D1.3(d)(7).

However, the Government has cited no authority indicating that Congress, as part

not available" (Pet. at 2), but this fact is irrelevant for purposes of resolving whether Congress enacted § 4248 consistent with its authority to enact laws "necessary and proper for carrying into execution [a] . . . Power[] vested by this Constitution." U.S. Const. art. 1, § 8, cl. 18.

of an incarceration power, has authority to stay the release of inmates—including, importantly, inmates who have never been charged with or convicted of a sex crime—until a Court can determine whether there is clear and convincing evidence that in the future the person is likely to commit a sex crime that might be federal or might not.

The Government's strongest authority is the decision in *Plotts,* where the Tenth Circuit held that Congress acted within its Necessary and Proper Clause authority by enacting a statute that requires federal inmates to provide DNA samples. 347 F.3d at 879–80. However, retaining custody of a released inmate's DNA sample is fundamentally different than retaining custody of the inmate. Further, the court cited specific Congressional findings as to its Necessary and Proper Clause authority. *Id.* at 877 n. 4. Finally, as stated above, the court found that the federal government was uniquely situated to develop a nationwide DNA database. The fact that states have adopted and enforced statutes for commitment of sexually dangerous persons demonstrates that Congress and the BOP are not uniquely situated to authorize commitment of such persons. As the court in *Comstock* made clear:

> The power to criminalize certain circumscribed sexually violent behavior is not an "enumerated power" upon which to premise the civil commitment of any potentially sexually dangerous persons as a "necessary and proper" act. Construing the necessary and proper clause in this way would allow Congress to take steps to "prevent" all kinds of conduct that it has no ability to criminalize in the first place.
>
> ... [W]here there is absolutely no nexus between the findings required for commitment under § 4248 and the likelihood that any individual prisoner would commit a federal sex crime, and where the vast majority of sexually violent conduct

and child sexual abuse is regulated by state law, and where the commitment of mentally disordered sexually violent individuals is traditionally handled by state governments, the federal government has created a situation in which its commitment efforts are likely to solely prevent the commission of state criminal conduct.

*Comstock,* 507 F.Supp.2d at 539–40.

For these reasons, the Court concludes that by enacting § 4248, Congress exceeded its authority under the Necessary and Proper Clause.

### 3. *Conclusion*

Government undeniably has a role in protecting society from sexually dangerous persons. However, Congress's role is limited by the United States Constitution. Section 4248 is not within those limits because it is not a necessary and proper execution of any power "vested by this Constitution in the Government of the United States, or in any Department or Officer thereof." U.S. Const. art. 1, § 8, cl. 18. For this reason, Tom's Motion to Dismiss must be granted.

### D. Remaining Arguments

Because the Court has determined that § 4248 was not a valid exercise of Congressional power, the Court has no reason to examine Tom's claims that the statutory scheme violates his constitutional liberties. Accordingly, the Court expresses no opinion as to these arguments.

### CONCLUSION

Because Congress has exceeded its authority in enacting 18 U.S.C. § 4248, the Court is required to take the uncommon but necessary step of finding that the statute is unconstitutional. Accordingly, **IT IS HEREBY ORDERED** that Respondent

Roger Dean Tom's Motion to Dismiss (Docket No. 25) is **GRANTED**.