UNITED STATES of America,
Petitioner,

v.

Todd CARTA, Respondent.

United States of America, Petitioner,

v.

Wesley Graham, Respondent.

United States of America, Petitioner,

v.

Jack W. McRae, Respondent.

Nos. 07–10057–JLT, 07–10064–JLT, 07–10066–JLT.

United States District Court,
D. Massachusetts.

Aug. 24, 2007.

Helen H. Hong, U.S. Department of Justice, Washington, DC, Mark T. Quinlivan, United States Attorney's Office, Boston, MA, for Petitioner.

Page Kelley, Charles P. McGinty, Federal Defender's Office, Judith H. Mizner, Boston, MA, for Respondent.

### MEMORANDUM

TAURO, District Judge.

The Respondents are being held in the custody of the Bureau of Prisons, even though the terms of their sentences have been completed. In each case, just before their sentences were set to end, the Government filed, with this court, a "Notice of Certification that Respondent Is a Sexually Dangerous Person and Request for Hearing Pursuant to 18 USC 4248(a)." The certification contains information on each Respondent, briefly laying out psychological and criminal history evidence. That information was relied on by the Interim Chairman of the Bureau of Prisons' Certification Review Panel in concluding that each Respondent is a sexually dangerous person who, by virtue of a men-

tal illness, would have difficulty preventing himself from committing further acts of sexual violence or child molestation.

Pursuant to 18 U.S.C. § 4248 (" § 4248"), a newly enacted provision of the Adam Walsh Child Protection Act of 2006, the filing of these certifications stayed the Respondents' release dates, keeping them in custody. The Government asks this court to act, pursuant to the statute, to hold evidentiary hearings and to find the Respondents sexually dangerous by clear and convincing evidence. Further, the Government seeks Respondents' potentially indefinite civil commitment to the custody of the Attorney General, who may or may not place them in a state treatment program.

Respondents move to dismiss, arguing the commitment regime established by the law is facially unconstitutional. After a Motion Hearing held on August 22, 2007, the court hereby orders that Respondent Carta's *Motion to Dismiss* [# 9], Respondent Graham's *Motion to Dismiss* [# 7], and Respondent McRae's *Motion to Dismiss* [# 10] are DENIED WITHOUT PREJUDICE to this court's consideration of an as-applied challenge. This decision is based on the following reasons.

The precise test to apply to a facial challenge is not clear.[1] In *United States v. Salerno*, the Supreme Court explained that "[a] facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid."[2] A plurality of the Supreme Court has since clarified that the so-called *Salerno* test may not always apply.[3] But, this court concludes that, in this case, which does not involve a general regulation on speech, but instead the application of a statutorily defined commitment process to specific classes of individuals, it is appropriate to hold the challenger to the high "no set of circumstances" test defined by *Salerno*.

**I**

*Respondents' facial claim that § 4248 is not a valid exercise of Congress's legislative power fails.*

■ A. Respondents ably draw some distinctions between the facts here and the exercise of Congress's Necessary and Proper Clause authority permitted by *Greenwood*,[4] *Perry*,[5] and *Plotts*.[6] But this

1. For a helpful discussion of the question, see *United States v. Sampson*, 275 F.Supp.2d 49, 69 (D.Mass.2003) (elucidating the difference between problems of standing and the substantive test that is applied to a facial challenge).

2. 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) ("The fact that the Bail Reform Act might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid, since we have not recognized an 'overbreadth' doctrine outside the limited context of the First Amendment.").

3. *City of Chicago v. Morales*, 527 U.S. 41, 55 n. 22, 119 S.Ct. 1849, 144 L.Ed.2d 67 (1999) ("Whether or not it would be appropriate for

federal courts to apply the *Salerno* standard in some cases—a proposition which is doubtful—state courts need not apply prudential notions of standing created by this Court.").

4. In *Greenwood v. United States*, 350 U.S. 366, 375, 76 S.Ct. 410, 100 L.Ed. 412 (1956), the court reasoned that the power of a pending indictment over an incompetent defendant who, if released, would commit further acts endangering the interest of the Unites States, allowed for an auxiliary power to commit the defendant, to prevent such crimes. The indictments of the Respondents are no longer pending and have been reduced to convictions. But, the court concludes that, where the Respondents are also in lawful custody of the Government, the power described in *Greenwood* applies.

court concludes that the scope of the auxiliary power, as defined in those cases, extends so far as to allow Congress to prevent the release of those lawfully in custody, where it has rationally set up a process for determining that those individuals are likely to commit further acts of sexual violence proscribed under Congress's Commerce Clause authority.

B. Respondents lack standing to charge that § 4248 violates the Tenth Amendment.[7]

## II

*Respondents' claim that § 4248 violates the Equal Protection clause fails.*

A. Respondents argue that *Foucha* mandates application of strict scrutiny to any unequal classifications in a law that restricts liberty.[8] But Respondents cannot point to case law which so interprets *Foucha,* and this court adopts the reasoning of courts which have applied rational basis review to laws like the one at issue.[9]

■ B. Those in federal custody and those not in custody are not similarly situated in terms of the danger presented and the ability of the Government to make identifications and provide treatment.[10] Respondents' argument that § 4248 imposes an unequal burden on all federal prisoners, therefore, fails.

■ C. Respondents argue that the differing provisions of § 4248 and § 4246 impose unequal burdens on the sexually dangerous from those who are already subject to confinement for dangerousness. But, Congress may rationally conclude that "a person with a mental disorder of a sexual nature is qualitatively more dangerous than another mental patient who none-

**5.** *United States v. Perry,* 788 F.2d 100, 111 (3d Cir.1986) ("Thus because Congress has the power to proscribe the activities in question, it has the auxiliary authority, under the necessary and proper clause, to resort to civil commitment to prevent their occurrence."). In *Perry,* the Third Circuit found a presumption of pretrial commitment based on dangerousness to the community to be authorized for defendants who committed and were likely to commit certain enumerated offenses. Though § 4248 is not linked to specific crimes, it still would have the goal and effect of preventing federal crimes. And, although § 4248 allows for detention beyond the term of a sentence, the court does not find that this distinction diminishes the government's auxiliary powers.

**6.** *United States v. Plotts,* 347 F.3d 873, 878 (10th Cir.2003) ("At bottom, then, the Necessary and Proper Clause enables Congress to enact laws, subject to other constitutional constraints, 'that bear a rational connection to any of its enumerated powers.'" (quoting *United States v. Edgar,* 304 F.3d 1320, 1326 (11th Cir.2002))). In *Plotts,* the Tenth Circuit found that the requirement that DNA be collected from those on supervised release, even if construed as a civil provision, was neces-

sary and proper to assist the executive in enforcing the law. This decision also based its conclusion on the proposition that Congress may necessarily and properly enact punishments for its laws. Though § 4248 is not a punishment (see *infra* point III), this decision demonstrates the broad scope of Congress's authority in this area to take preventative measures that assist the executive in the prevention of federal crime.

**7.** *See Medeiros v. Vincent,* 431 F.3d 25, 36 (1st Cir.2005).

**8.** *See Foucha v. Louisiana,* 504 U.S. 71, 86, 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992). *See also City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985) (describing heightened review when laws impinge on protected rights).

**9.** *See e.g., United States v. Weed,* 389 F.3d 1060, 1071 (10th Cir.2004); *Commonwealth v. Tate,* 424 Mass. 236, 675 N.E.2d 772, 774–75 (1997).

**10.** *Hubbart v. Knapp,* 379 F.3d 773, 781 (9th Cir.2004) (applying heightened scrutiny in habeas review of state court ruling, while noting such scrutiny was not ordinary).

theless threatens danger to himself or others." [11]  And so, the differing provisions of § 4246 and § 4248 pass rational basis review.

## III

*Section 4248 is civil, not criminal.*

■ The title of § 4248, the placement of that provision with the other civil commitment sections, and the statute's focus on commitment of those who are dangerous by virtue of a mental illness, all demonstrate that the law was intended to be civil, not criminal in nature. [12]  Some effects of § 4248 are punitive in nature, such as the involuntary detention of the Respondents.  But, in examining the seven factors used to assess punitive effect, [13] the court does not discern an adequate distinction between § 4248 and the law examined in *Kansas v. Hendricks,* that would support finding " 'the clearest proof' that 'the statutory scheme [is] so punitive either in purpose or effect as to negate [the State's] intention' to deem it 'civil.' " [14] Accordingly, the court rejects Respondents' claims that the statute facially violates a number of constitutional guarantees to those facing criminal charges.

## IV

*Respondents' claims that § 4248 facially violates the Due Process clause fail.*

■ A.  Respondents' argue that, unlike the Kansas law upheld in *Kansas v. Hendricks,* § 4248 allows commitment proceedings to be brought against any inmate, not just those who have a prior conviction for a sex crime.  But the Supreme Court in *Kansas v. Hendricks* did not rely on the requirement of a prior conviction. [15]  Rather, it noted that the concurrent presence of a mental abnormality and dangerousness was constitutionally sufficient. [16]

By requiring the Government to prove that a respondent "suffers from a serious mental illness, abnormality, or disorder as a result of which he would have serious difficulty in refraining from sexually violent conduct or child molestation," [17] the federal commitment regime adequately addresses both the mental abnormality and dangerousness requirements.

It is conceivable that the Government could show these elements without there having been a prior conviction.  The congressional decision not to require such a conviction does not make § 4248 facially unconstitutional.

**11.** *Thielman v. Leean,* 282 F.3d 478, 485 (7th Cir.2002).

**12.** *See, e.g., Kansas v. Hendricks,* 521 U.S. 346, 361, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997). 5

**13.** The Court lays out these factors as follows:

Whether the sanction involves an affirmative disability or restraint, whether it has been historically regarded as punishment, whether it comes into play only on a finding of scienter, whether its operation will promote the traditional aims of punishment—retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to

which it may rationally connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned.
*Kennedy v. Mendoza–Martinez,* 372 U.S. 144, 168–69, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963).

**14.** *Hendricks,* 521 U.S. at 361, 117 S.Ct. 2072 (quoting *United States v. Ward,* 448 U.S. 242, 248–49, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980)).

**15.** *Id.* at 358, 117 S.Ct. 2072.

**16.** *Id.*

**17.** 18 U.S.C. § 4247(a)(6).

B.  Section 4248(a) allows for Respondents to be detained after the end of their sentence upon the filing of an administrative certification that Respondents are sexually dangerous persons.  Respondents argue that this provision impermissibly allows the Government to detain and hold people in Respondents' position without a neutral determination that probable cause exists.[18]  But this court cannot say at this time that everyone in Respondents' circumstances will be illegally detained.

The stay of release commences only when the certificate is filed with the district court.  The court would then be in a position to review the application and to make sure the certification is in order.  Nothing in the statute precludes a court from moving immediately into a merits hearing if it finds the certification fatally flawed.

Congress may presume the district courts will fairly and expeditiously respond to filings.  If a district court fails to act, mandamus and habeas relief would remain available.

While Congress could have erected additional safeguards, this court cannot say, in response to a facial challenge, that the statute's provision for district court oversight is constitutionally insufficient.

C.  Pointing to other quasi-criminal proceedings, Respondents argue that § 4248 fails to provide required notice, burdens of proof, or rights to a jury trial.  But, because the Supreme Court has found a clear and convincing standard adequate for civil commitment,[19] and because § 4248

does not establish criminal proceedings, this court does not find the procedures adopted to be facially invalid.

## V

*This court rejects the Respondents' vagueness challenges.*

Terms such as "child molestation" and "sexually violent conduct" have a plain meaning and are not "so vague and standardless that it leaves the public uncertain."[20]

## VI

*The Daubert challenge is premature.*

*Daubert* announced an evidentiary rule, not a constitutional standard.[21]  The Government has yet to put forth the evidence or experts it intends to rely on at an evidentiary hearing.  The court concludes that it is proper to wait to evaluate the reliability of any such evidence until such time when a full *Daubert* hearing can be held.

An order will issue.

---

**18.**  *See Gerstein v. Pugh,* 420 U.S. 103, 114, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975) ("[T]he Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest.").

**19.**  *Addington v. Texas,* 441 U.S. 418, 429, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979).

**20.**  *See Morales,* 527 U.S. at 56, 119 S.Ct. 1849.

**21.**  *Kinder v. Bowersox,* 272 F.3d 532, 545 n. 9 (8th Cir.2001).